UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| Jalesha Johnson, Louise Bequeaith, Brad Penna, Brandi Ramus, and Haley Jo Dikkers, <br><br> Plaintiffs, <br><br> v. <br><br> Stephan K. Bayens, Commissioner of the Iowa Department of Public Safety, *in his official and individual capacities*, Lieutenant Steve Lawrence, Iowa State Patrol District 16 Commander, *in his official and individual capacities*, and Sergeant Tyson Underwood, Assistant District 16 Commander, *in his individual capacity*, Iowa State Patrol Trooper Durk Pearston (Badge Number 168), *in his individual capacity*, and Iowa State Patrol Trooper John Doe #1, *in his individual capacity*. <br><br> Defendants. | Docket No. 20-306 <br><br> **CIVIL RIGHTS COMPLAINT** <br><br> **FOR DECLARATORY AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DAMAGES** <br><br> **AND DEMAND FOR A JURY TRIAL** |

## INTRODUCTION

1.     Plaintiffs are among a group of 17 supporters of the Black Lives Matter movement who on July 1, 2020 were banned by the Iowa State Patrol from the State of Iowa Capitol and the Iowa Capitol Complex grounds—in some cases for six months, until January 1, 2020, and in others for one year, until July 1, 2021.

2.     Iowa State Patrol officers banned all the Plaintiffs verbally following their participation in a protest organized by the Des Moines Black Liberation Movement ("Des Moines BLM") and arrests at the State Capitol on July 1, 2020. Subsequently, some of the Plaintiffs were also given written bans through letters mailed by the Iowa State Patrol to their homes.

3.      The First Amendment to the United States Constitution protects "the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." It is the solemn duty of law enforcement and of state administrative agencies to faithfully uphold and protect the Constitutional rights of residents of this country. More than any other law enforcement group in the State, this duty must be most faithfully fulfilled by Division 16 of the Iowa State Patrol. Division 16 is responsible for law enforcement at the Iowa State Capitol and the surrounding the Iowa Capitol Complex grounds where Iowans routinely and freely go to petition the Legislature and the Governor. The Iowa State Capitol and Iowa Capitol Complex, where Plaintiffs may no longer exercise any protected First Amendment expression until at least January 1, 2021 and in some cases until July 1, 2021, include many important and traditional public fora.

4.      Plaintiffs challenge the Defendant's stunning misuse of power to retaliate against them for exercising their protected free speech, institute a prior restraint on their future protected expression, and disrupt the right of people to speak, peaceably to assemble, and petition the government for redress of grievances. The bans likewise unconstitutionally interfere with the Plaintiffs' fundamental freedom of movement. Additionally, Plaintiffs challenge the bans as violating due process by failing to provide them constitutionally sufficient notice and an opportunity to be heard to contest the bans.

5.      In this action, as further supported by a separate, contemporaneous motion, Plaintiffs seek a preliminary injunction to immediately stop the enforcement of Defendants' unconstitutional ban from all Iowa Capitol Complex grounds. Plaintiffs wish to return to the Iowa Capitol Complex grounds as soon as possible to exercise their protected constitutional rights once

more. In addition to the preliminary injunction, Plaintiffs seek declaratory and permanent injunctive relief, damages, and attorney's fees.

## JURISDICTION

6.      As Plaintiff's claims arise under 42 U.S.C. § 1983, and the First, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution, this Court has jurisdiction over this civil action under 28 U.S.C. §§ 1331 and 1343. Because Plaintiff's claims arise under the United States Constitution and federal law, this Court has jurisdiction to declare the rights of the parties and to grant all further relief found necessary and proper pursuant to §§ 2201 and 2202.

## VENUE

7.      The acts described herein occurred in the Southern District of Iowa. Further, all Defendants, and most or all of the individual Plaintiffs, reside in the Southern District of Iowa. Accordingly, Defendants are subject to personal jurisdiction here and venue is proper in this court.

## PARTIES

**Plaintiffs**

8.      Plaintiff **Jalesha Johnson** is a Des Moines resident and student at Drake University earning her degree in secondary education. She also works at Run DSM, a Des Moines Public Schools creative arts program. After George Floyd was killed in May 2020, she became an organizer of the Des Moines Black Liberation Movement ("Des Moines BLM"), a part of the Black Lives Matter movement around the country. One of the main goals of Des Moines BLM is to address the systemic violence by law enforcement against Black people. On July 1, 2020, Des Moines BLM organized a protest of Iowa's then-policy of disenfranchising all Iowans convicted of felony offenses for life. On that date, along with more than 16 other protesters, Ms. Johnson was arrested. She was then taken to the Des Moines Police Department, where the Des Moines

Police Department took her name and address. Iowa State Patrol Trooper John Doe #1 took her picture, and verbally banned Ms. Johnson from the Iowa Capitol Complex for one year, instructing her that officers will arrest her and charge her with trespass if she is found on the premises. As a result, she and Des Moines BLM have been forced to move their protests off the Iowa Capitol Complex, and she was unable to attend demonstrations organized by other groups on the Iowa Capitol Complex grounds. She will continue to be blocked from taking part in protests and other events at the Capitol for the duration of the ban, as well as from communicating with legislators and the Governor's office at the Capitol during the upcoming legislative session.

9.      Plaintiff **Louise Bequeaith** was born and raised in Des Moines, which remains her permanent address as she attends college in St. Paul, Minnesota as a sophomore. After George Floyd was killed, she attended numerous protests organized by Des Moines BLM. On July 1, 2020 Ms. Bequeaith, like Ms. Johnson, was verbally banned from the Iowa Capitol Complex for one year under threat of arrest by Iowa State Patrol Trooper John Doe # 1. Ms. Bequeaith also subsequently received a written letter from Iowa State Patrol Sergeant Tyson Underwood banning her from the Iowa Capitol Complex for six months, until January 1, 2021. As a result of the bans she has been unable to take part in protests and other advocacy at the Iowa Capitol Complex. Unless the bans are enjoined, she will continue to be kept from exercising these constitutional rights for the duration of the bans.

10.      Plaintiff **Brandi Ramus** is a lifelong Des Moines resident who runs her own business as a hairstylist and is the mother of two children. After George Floyd was killed, she attended numerous protests organized by Des Moines BLM, including the July 1, 2020 protest at the Capitol. On July 1, 2020 Defendant Iowa State Patrol Trooper Durk Pearston banned her from the Iowa Capitol Complex for six months, until January 1, 2021. Two weeks later, she was also

4

mailed a written ban from the premises from Iowa State Patrol Sergeant Tyson Underwood for the same duration. As a result of the bans she has been unable to take part in protests and other advocacy at the Iowa Capitol Complex. Unless the bans are enjoined, she will continue to be kept from exercising these constitutional rights for the duration of the bans.

11.     Plaintiff **Brad Penna** owns the highly popular Horizon Line coffee shop in Des Moines. He has previously worked in higher education with a focus on restorative justice, and holds a master's degree in theology from Fuller Theological Seminary. After George Floyd was killed, he attended numerous protests organized by Des Moines BLM, including the July 1, 2020 protest at the Capitol. On July 1, 2020, Mr. Penna, like Ms. Ramus, was banned from the Iowa Capitol Complex for six months, until January 1, 2021, by Iowa State Patrol Trooper Pearston. As a result of the bans he has been unable to take part in protests and other advocacy at the Iowa Capitol Complex. Unless the bans are enjoined, he will continue to be kept from exercising these constitutional rights for the duration of the bans.

12.     Plaintiff **Haley Jo Dikkers** is a recent graduate of Drake University, where she majored in psychology. She works as an education assistant, helping elementary school students and their families navigate "pod learning" and remote education during the Covid-19 crises. She began attending Des Moines BLM demonstrations in June 2020, and attended the July 1, 2020 protest at the Capitol. On July 1, 2020, like Mr. Penna and Ms. Ramus, Ms. Dikkers was verbally banned from the Iowa Capitol Complex for six months by Iowa State Patrol Sergeant Pearston. Two weeks later, like Ms. Bequeaith and Ms. Ramus, Ms. Dikkers also received a written six-month ban from the Iowa Capitol Complex signed by Iowa State Patrol Sergeant Underwood. As a result of the bans she has been unable to take part in protests and other advocacy at the Iowa

Capitol Complex. Unless the bans are enjoined, she will continue to be kept from exercising these constitutional rights for the duration of the bans.

**Defendants**

13.     Defendant **Commissioner Stephan Bayens** is a resident of Iowa and is the head of the Iowa Department of Public Safety ("IDPS"). In that role he has supervisory responsibilities over law enforcement functions of the State of Iowa, and over the Iowa State Patrol ("ISP") Officers who carry out those functions, including as to policies, training, and disciplinary actions. He is sued in his official and individual capacities.

14.     Defendant **IDPS** is an administrative agency of the state that is responsible for policing and law enforcement and includes as a division the ISP.

15.     Defendant **ISP** is responsible for law enforcement by the State of Iowa at the State Capitol and the Capitol Complex grounds, including the enforcement of the unconstitutional bans from the Capitol Complex it issued to Plaintiffs in this case.

16.      Defendant **Lieutenant Steve Lawrence** is the Iowa State Patrol District 16 Commander who oversees the law enforcement activities of the Iowa State Patrol District 16, including the Iowa State Capitol and Capitol Complex grounds. Iowa State Patrol Officers who delivered verbal and written bans to DSM BLM protesters, including Plaintiffs, report to Lieutenant Steve Lawrence. He is sued in his official and individual capacities.

17.     Defendant **Sergeant Tyson Underwood** is the Assistant District 16 Commander of the Iowa State Patrol. Sergeant Underwood mailed written letters to a number of DSM BLM protesters, including some of the Plaintiffs, banning them from the Iowa State Capitol and Capitol Complex grounds until January 1, 2021. He is sued in his official and individual capacities.

18.     Defendant **Trooper Durk Pearston (Badge Number 168)** is a member of the Iowa State Patrol. Sergeant Pearson verbally banned Ms. Ramus, Mr. Penna, and Ms. Dikkers from the Iowa Capitol Complex for six months, until January 1, 2021. Defendant Pearston is sued in his individual capacity.

19.     Defendant **Trooper John Doe #1** verbally banned Ms. Johnson and Ms. Bequeaith from the Iowa Capitol Complex for one year, until July 1, 2021. Trooper John Doe #1's identity is unknown to Ms. Johnson and Ms. Bequeaith. They were able to identify him as a member of the Iowa State Patrol by his uniform and badge. He is presumed to be a member of District 16. It is unknown to Plaintiffs whether Trooper John Doe #1 is Sergeant Pearston. Based on information and belief, Defendants are in possession of this information and know how to identify Trooper John Doe #1.  John Doe #1 is sued in his individual capacity.

## STATEMENT OF FACTS

20.     Plaintiffs repeat and incorporate by reference all allegations contained in the preceding paragraphs as though set forth fully herein.

21.     Black Americans and other people of color have long experienced disproportionate use of force and other abuses by law enforcement officers. Black Americans are disproportionately arrested for offenses committed at the same rates by Black and white people. They also make up a disproportionately high percentage of people confined in America's jails and prisons.

22.     In Iowa, these racial disparities are among the worst in the country. A Black person in Iowa is seven times more likely to be arrested for drugs than a white person, although the two groups use at equal rates.[1] This is the fifth-worst disparity in the country. While only three percent

---

[1] American Civil Liberties Union, A Tale of Two Countries: Racially Targeted Arrests in the Era of Marijuana Reform, at 64 (2020), *available at* https://www.aclu.org/report/tale-two-countries-racially-targeted-arrests-era-marijuana-reform.

of Iowans are Black, twenty-six percent of prison inmates in Iowa are Black. A Black person in Iowa is 11 times more likely to be incarcerated than a white person.[2] This is the third-worst disparity in the country.

23.     On May 25, 2020, George Floyd, a 46-year old Black man, was killed by Minneapolis, Minnesota police officer Derek Chauvin. The nation watched cell phone video footage that spread quickly across traditional and social media of Derek Chauvin cruelly and senselessly pressing his knee into Mr. Floyd's neck, obstructing his breathing for nearly 9 minutes. Spontaneous protests emerged and grew across the country, including in Des Moines, Iowa, to voice outrage and despair at police violence against Black people, and to call for dramatic change to policing in America.

24.     In the days that followed, organizations and individuals supporting the Black Lives Matter movement in Des Moines organized demonstrations, vigils, and protests calling for police reform and racial justice more broadly. The vast majority of protests and protesters were peaceful.

25.     Des Moines BLM emerged early as the leader of the Black Lives Matter movement in Des Moines. Des Moines BLM's protests were well-organized, and expressly non-violent.

26.     The activism of Des Moines BLM has been a catalyst to drive important reforms in Des Moines and in the State of Iowa, including the adoption of a city ordinance banning racial profiling, state legislation prohibiting law enforcement from using chokeholds in many circumstances, and the adoption of an executive order restoring voting rights to most people convicted of felony offenses.

---

[2]     The Sentencing Project, State-by-State Data: Black/White Disparity, https://www.sentencingproject.org/the-facts/#rankings?dataset-option=BWR.

27.     Many of the protests organized by Des Moines BLM and others were held at the Iowa State Capitol, where protesters could reach an audience of both state and local policymakers, including legislators, the Governor, and local police.

28.     On July 1, 2020, Des Moines BLM organized a day-time protest at the State Capitol to end lifetime disenfranchisement of Iowans with felony convictions. As was the case with a day-time protest held at the Capitol the day before, clergy and families, including children, attended, and protesters did not expect or desire to experience a confrontation with local or state police.

29.     Des Moines Police Department officers came to the protest with warrants to arrest individuals they suspected of engaging in damage of a police vehicle at a prior protest held at a Hy-Vee store. As they pulled those individuals out of the crowd of lawfully-protesting Des Moines BLM supporters in order to arrest them, police offered no explanation of their actions, causing alarm and confusion among the crowd of protesters.

30.     In the chaos, Des Moines Police Department officers arrested over 17 protesters in addition to the people that they arrived up with warrants to arrest. None of the Plaintiffs were arrested for the prior Hy-Vee protest.

31.     Once they were arrested, Iowa State Patrol officers, including Defendants Trooper Pearston and Trooper John Doe #1, verbally banned all 17 protesters from the Iowa Capitol Complex. Both officers were on duty and wearing their Iowa State Patrol uniforms, and spoke to the Plaintiffs with apparent authority on behalf of the State of Iowa, Department of Public Safety while the Plaintiffs were being held in the custody of the Des Moines Police Department. Some Plaintiffs were banned for six months, until January 1, 2021. Others were banned for one year, until July 1, 2021. They were all told if they were found on the premises of the Iowa Capitol Complex they would be arrested or cited and referred for prosecution for criminal trespass.

9

32.     Two weeks later, some of the group of 17, but not all, received an additional written ban from the Iowa Capitol Complex for six months until January 1, 2021. This letter was signed by Iowa State Patrol Sergeant Tyson Underwood on the official State of Iowa letterhead of Stephan K. Bayens, Commissioner of the Iowa Department of Public Safety.

33.     The identical written letters provided that the basis of the ban was "your actions and/or behavior towards citizen(s) and/or employee(s) of the State of Iowa on July 1st, 2020". The letter purported that the bans were "pursuant to Section 716.8(1) of the Iowa Code". The letter stated that entry "upon any portion of the property known as 1007 East Grand Avenue, Des Moines, IA 50319 including yards, parking areas, state owned streets and sidewalks, and all state owned facilities within the Capitol Complex grounds" "will be reported to law enforcement for criminal prosecution."

34.     The Iowa Capitol Complex is a huge area taking up approximately 24 city blocks, including Lyon, Des Moines, Grand, Locust, Walnut, and Court avenues/streets between East 6th and E. 14th Streets. The Iowa Capitol Complex includes: the State Capitol itself, where the Iowa Governor's Office, Legislature, and other State Executive Offices are located; the State Judicial Building; State Historical Building; numerous other state buildings; museums; and all the surrounding green areas and paved exterior areas purposely designed to facilitate and accommodate the assembly of the citizenry to petition the state government, such as the West Capitol Terrace, monuments, public sidewalks, and public streets.

35.     There is no statutory authority for such a ban. Iowa Code section 716.8(1), cited in the letter, actually just sets out that the penalty imposed on a person who "knowingly trespasses upon the property of another" is a simple misdemeanor punishable with a fine, and allowing officers to arrest the person so charged. It does not purport to authorize state patrol officers to enforce a six-

month or one-year prior restraint on individuals' exercise of core First Amendment rights and freedoms on the State Capitol Complex based on their (here, alleged and un-convicted) behavior.

36.     Plaintiffs were given no prior notice or opportunity to be heard to contest the bans. If the Iowa State Patrol undertook any fact-finding prior to banning Plaintiffs from the Iowa Capitol Complex, they did so in secret without notice to the Plaintiffs or opportunity for Plaintiffs to be heard.

37.     Nor did the bans result from any judicial process of any kind.

38.     There is also no process to appeal the bans available to Plaintiffs.

39.     As a result of the bans imposed by Iowa State Patrol, Plaintiffs have already been kept from organizing and participating in protests and other constitutionally protected and lawful activities at the Capitol. They will continue to be blocked from engaging in these activities for the duration of the bans.

**Plaintiffs**

**A.  Jalesha Johnson**

40.     Plaintiff Jalesha Johnson is a Des Moines resident and student at Drake University earning her degree in secondary education. She also works at Run DSM, a Des Moines Public Schools creative arts program. After George Floyd was killed in May 2020, she became an organizer with Des Moines BLM.

41.     Ms. Johnson serves as the Director of the Culture Department, in which role she plans events, monitors the organization's email, and conducts promotional activities, with a focus on using the arts as part of her activism. Specifically, she works to bring performers to events, lead crowds in chants, and organizes healing workshops that guide Des Moines BLM supporters— many of whom have been physically injured, tear-gassed, and pepper-sprayed by Des Moines

Police Department officers during non-violent protests—through breathing exercises and meditation.

42.     In this role with Des Moines BLM, Ms. Johnson regularly helps organize protests, which she also attends. Since May 25, 2020, when George Floyd was killed, Des Moines BLM scheduled events for approximately four or five days almost every week. Des Moines BLM held many of its early protests and events at the Iowa State Capitol, which Ms. Johnson believes is the best setting to communicate its message and reach its target audience—policymakers like the Governor and state legislators, as well as the press, and the public.

43.     On July 1, 2020, Ms. Johnson helped plan and attend a Des Moines BLM protest at the State Capitol to end lifetime disenfranchisement of Iowans with felony convictions. There, she was arrested along with 16 other Des Moines BLM leaders and supporters, in addition to those who were arrested on charges related to an earlier protest at Hy-Vee.

44.     At the Des Moines Police Station, along with others, including Ms. Bequeaith, Ms. Johnson was banned from the Iowa Capitol Complex grounds for one year by Iowa State Patrol Trooper John Doe #1.  Trooper John Doe #1 told them that if any of them were found present on the Iowa Capitol Complex grounds during that time, they would be arrested for trespass. As part of this communication, Trooper John Doe #1 took Ms. Johnson's picture.

45.     Because of this ban, Ms. Johnson and Des Moines BLM have had to move all events off the Iowa Capitol Complex grounds. The ban has also kept Ms. Johnson from taking part in events on the Iowa Capitol Complex grounds scheduled by other organizations and individuals who share Des Moines BLM's goals of advancing racial justice in our state.

46.     The ban will also cause Ms. Johnson to be unable to organize and participate in future protests and other events at the Iowa State Capitol and the Iowa Capitol Complex grounds,

to lobby legislators and the Governor, to volunteer at the Capitol, and will impede her ability to do her job with Run DSM, which organizes spoken word events on the Iowa Capitol Complex grounds. These are all activities she participated in during recent years, including 2020, and would participate in through July 1, 2021. However, she is prohibited from doing so by the ban.

**B. Louise Bequeaith**

47.     Plaintiff Louise Bequeaith was born and raised in Des Moines, which remains her permanent address as she attends college in St. Paul, Minnesota as a sophomore.

48.     She feels passionately about doing what she can to advance the Black Lives Matter movement to address years of injustices suffered by Black Americans and other people of color at the hands of law enforcement.

49.     After her college switched to remote classes in March in order to protect against the spread of the novel coronavirus, she returned to Des Moines to continue her classes virtually. She began attending the protests organized by Des Moines BLM on May, 29, 2020, after George Floyd was killed, and continued attending regularly.

50.     Ms. Bequeaith attended the July 1, 2020 Des Moines BLM protest at the Capitol. Like Ms. Johnson, she was arrested and taken to the Des Moines Police Station.

51.     Ms. Bequeaith was in the same group as Ms. Johnson of arrested protesters to whom Trooper John Doe #1 communicated a one-year ban from the Iowa Capitol Complex grounds for one year, under threat of arrest if found on the premises. Like Ms. Johnson, Trooper John Doe #1 took her photo as part of this communication.

52.     However, unlike Ms. Johnson, Ms. Bequeaith was then mailed a second, written ban from Iowa State Patrol Sergeant Tyson Underwood, Assistant District 16 Commander. This

written letter provided to Ms. Bequeaith that she was banned from the Iowa Capitol Complex grounds until January 1, 2021.[3]

53.     The letter did not rescind or revoke the prior one-year ban delivered verbally.

54.     Nor did the letter clearly define what property is included within the Iowa Capitol Complex grounds.

55.     As a result of the ban, Ms. Bequeaith was prohibited from taking part in two protests she wanted to attend: a demonstration led by Indigenous persons at the Capitol, and a clergy-led demonstration at the Capitol asking that charges against Des Moines BLM protesters be dropped.

56.     She will continue to be prohibited from taking part in demonstrations and other activities at the Iowa Capitol Complex grounds for the duration of the ban.

57.     She will be unable to participate in lobbying during the upcoming legislative session, which she had planned to do.

58.     Finally, the ban has kept her from being able to attend a yoga class at the State Capitol which she had been attending weekly prior to the ban.

**C.  Brandi Ramus**

59.     Plaintiff Brandi Ramus is a lifelong Des Moines resident who runs her own business as a hairstylist and is the mother of two children. As a mother, she felt compelled to participate in the Black Lives Matter movement to speak out against police practices in her community.

60.     On July 1, 2020, she too was arrested at the State Capitol protest. She was taken to a paddy wagon where she was held with a small group of protesters, including Mr. Penna, and Ms. Dikkers.

---

[3] *See* Ex. A to Bequeaith Dec., attached to Mot. for Preliminary Injunction.

61.     Des Moines Police Department officers drove the vehicle to the police station, where they were met by Iowa State Patrol Officers. One by one, they were taken out of the vehicle, where officers with the Des Moines Police took their photo and names. Then Defendant Trooper Pearston with the ISP informed them that they were banned from the Iowa Capitol Complex grounds for six months, until January 1, 2021, under threat of arrest for criminal trespass.

62.     Ms. Ramus repeatedly called the Iowa State Patrol to ask what was included in the Iowa Capitol Complex grounds area that she was banned from.

63.     During the July 4, 2020 Indigenous People's rights demonstration, she used her cell phone to call the Iowa State Patrol. She spoke with a trooper who finally directed her to a map online, so that she and the group of banned demonstrators who had wanted to attend the demonstration could avoid arrest by inadvertently entering the prohibited area.[4] From the area several blocks away from the event that they were forced to be in order to avoid arrest, they could not see or hear speakers or communicate their support for the event.[5]

64.     On July 15, 2020, Ms. Ramus also received the written six month ban letter, signed by Defendant Sergeant Tyson Underwood, identical in content to the one received by Ms. Bequeaith. Like Ms. Bequeaith's letter, Ms. Ramus's letter also lacked a clear description or map of the Iowa Capitol Complex grounds, and was silent on the impact of the written ban on the prior verbal ban.[6]

---

[4] *See* Ex. B to Ramus Dec., attached to Mot. for Preliminary Injunction (showing the online map Ms. Ramus was directed to).

[5] *See* Ex. C to Ramus Dec., attached to Mot. for Preliminary Injunction (showing where on the map the Indigenous People's rights demonstration took place, and where Ms. Ramus, Mr. Penna, and Ms. Dikkers were forced to go in order to avoid stepping onto the banned State Capitol Complex premises).

[6] *See* Ex. A to Ramus Dec., attached to Mot. for Preliminary Injunction.

65.     Ms. Ramus attempted to contact legislators about the ban. She emailed all State Senate and House leaders in a joint email. Her inquiries largely went unanswered. Leadership from both parties indicated that they were not involved in any decision-making about the ban, and as such had no information to answer her questions about the ban. One legislator who had spoken to Iowa State Patrol about the ban declined to provide her further information. Some legislators indicated they would look into the matter in July, but have not provided any further information.

66.     Because of the ban, she was unable to attend the event held by clergy members at the Iowa Capitol Complex grounds asking that criminal charges against Des Moines BLM be dropped, which she would have attended if the ban were not in place.

67.     Because of the ban, she will continue to be blocked from attending demonstrations and other events on the Iowa Capitol Complex grounds.

68.     She will also be unable to take part in recreational activities she normally takes part in on the Iowa Capitol Complex grounds, including roller skating and weekly yoga classes.

**D. Brad Penna**

69.     Plaintiff Brad Penna owns the highly popular Horizon Line coffee shop in Des Moines, has previously worked in higher education with a focus on restorative justice, and holds a master's degree in theology from Fuller Theological Seminary.

70.     After George Floyd was killed in May 2020, he joined a number of the Des Moines BLM-organized protests and attended events to show solidarity with the Black Lives Matter movement.

71.     Like the other plaintiffs, Mr. Penna was arrested at the July 1, 2020 protest at the Capitol. He was placed in the same vehicle as Ms. Ramus and Ms. Dikkers, and driven to the Des Moines Police Department, where an officer with Des Moines Police Department took his picture

and name. Then, Trooper Pearston with the ISP told him he was banned from the State Capitol Complex Grounds for 6 months, and would be arrested if found on the premises.

72.     Like the other plaintiffs, Mr. Penna was unable to participate in the July 4, 2020 demonstration for justice for Indigenous people held at the Capitol because of the ban. Like a group of others who were banned, he tried to support from a distance, but was unable to see or hear speakers, and was unable to communicate his own support because he wasn't seen or heard from his distance.

73.     He will continue to be prohibited from participating in events on the State Capitol Complex Grounds for the duration of the ban.

74.     He is prohibited from meeting with policymakers from the legislative or executive branch at the State Capitol, something he wishes to do as a small business owner impacted by Covid-19.

75.     He will continue to be prohibited from these activities for the duration of the ban.

**E.   Haley Jo Dikkers**

76.     Plaintiff Haley Jo Dikkers is a recent graduate of Drake University, where she majored in psychology. She works as an education assistant, helping elementary school students and their families navigate online education and "pod learning" during the Covid-19 crises.

77.     She began attending Des Moines BLM demonstrations in June, 2020, and took part in the July 1, 2020 Capitol protest of Iowa's disenfranchisement policy in place at that time.

78.     Like the other plaintiffs, Ms. Dikkers was arrested and placed in a paddy wagon. She was placed in the same smaller group as Mr. Penna and Ms. Ramus. They were driven to the Des Moines Police Department, where an officer with the Des Moines Police Department took them out one by one to take their pictures and names. Then, ISP Trooper Pearston communicated

17

a verbal ban from the Iowa Capitol Complex grounds for six months. He told them that if they were found present on the grounds they would be arrested for trespass.

79.     Like Ms. Bequeaith and Ms. Ramus, Ms. Dikkers received a written ban two weeks later signed by Defendant Sergeant Tyson Underwood.[7] Other than the addressee, the letter was identical to the ones received by Ms. Bequeaith and Ms. Ramus.

80.     As a result of the ban, Ms. Dikkers was also kept from participating in the Indigenous People's event on July 4, 2020, and will be unable to participate in protests or other activities that she would like to engage in on the Iowa Capitol Complex grounds until January 1, 2021.

## CLAIMS FOR RELIEF

81.     All individually named Defendants have acted, are acting, and threaten to act with apparent authority and under color of state law to deprive Plaintiffs of their constitutional rights.

### Declaratory Relief

82.     An actual and immediate controversy exists between Plaintiffs and Defendants. Defendants presumably believe that the bans are constitutional. Plaintiffs contend that the challenged bans are unconstitutional in multiple ways, have already violated their constitutional rights, and will continue to do so absent relief from this Court.

83.     Plaintiffs are therefore entitled to a declaration of rights with respect to this controversy. Without such a declaration, Plaintiffs will be uncertain of their rights and responsibilities under the law.

---

[7] *See* Ex. A to Dikkers Dec., attached to Mot. for Preliminary Injunction.

**Injunctive Relief**

84.     Plaintiffs are entitled to an injunction. Plaintiffs will suffer irreparable injury under the real and immediate threat of enforcement of the challenged bans. Plaintiffs have no plain, adequate, or speedy remedy at law. Plaintiffs are refraining from constitutionally protected activities solely for fear of arrest, citation, and/or prosecution if they violate the bans.

**Damages**

85.     Plaintiffs are entitled to damages for the violations of their constitutional rights which they have already endured as a result of the bans.

**CAUSES OF ACTION**

**COUNT I:**

**42 U.S.C. § 1983 – Violation of Civil Rights Provided Under the First Amendment, Fifth, and Fourteenth Amendments – Prior Restraint**

86.     Plaintiffs restate and reallege all previous paragraphs of this Complaint.

87.     Defendants' six-month and one-year bans from the Iowa Capitol Complex came without any required judicial procedural safeguards or exception for the wide variety of protected First Amendment activities necessarily implicated, including the rights of free speech, assembly, and the right to petition their government for redress of grievances. As such, each ban is an odious and constitutionally intolerable prior restraint of those rights under the First, Fifth, and Fourteenth Amendments.

88.     This prior restraint is made all the worse by the fact that it limits free speech on what are traditional public fora—indeed, the State Capitol and surrounding public spaces are perhaps our state government's *most important traditional* public fora for Iowans to gather and express their speech where it may be heard best by an audience of elected state government officials.

19

Other areas included in the premises of the ban are designated public fora and nonpublic fora, where the ban also fails any conceivable level of scrutiny.

89.     Plaintiffs have suffered, are suffering, and absent prospective relief will continue to suffer injuries as a result of these violations.

## COUNT II:

### 42 U.S.C. § 1983 – Violation of Civil Rights Provided Under the First and Fourteenth Amendments – Speech

90.     Plaintiffs restate and reallege all previous paragraphs of this Complaint.

91.     A total ban necessarily prohibits all expressive activity, including core political speech, on the traditional public fora and designated public fora within the premises of the State Capitol Complex, including many of its green spaces, paved terraces, streets, and sidewalks. The ban's complete prohibition of all expressive activity is not a reasonable time, place, manner restriction; nor is it narrowly drawn. The total prohibition on all speech by the Plaintiffs on the State Capitol Complex not only fails all applicable levels of scrutiny; it is a per se violation of the Plaintiffs First Amendment rights to free speech.

92.     Plaintiffs have suffered, are suffering, and absent prospective relief will continue to suffer injuries as a result of these violations.

## COUNT III:

### 42 U.S.C. § 1983 – Violation of Civil Rights Provided Under the First and Fourteenth Amendments – Assembly

93.     Plaintiffs restate and reallege all previous paragraphs of this Complaint.

94.     It is indisputable that Defendants' bans, which prohibit Plaintiffs from entering the Iowa Capitol Complex premises for any reason under threat of citation or arrest for criminal trespass, reasonably chills Plaintiffs in engaging in the right to peacefully assemble there, including

all the traditional and designated public fora contained therein, and violates their rights under the First and Fourteenth Amendments.

95.     Plaintiffs have suffered, are suffering, and absent prospective relief will continue to suffer injuries as a result of these violations.

### COUNT IV:

**42 U.S.C. § 1983 – Violation of Civil Rights Provided Under the First and Fourteenth Amendments – Petition Government for Redress of Grievances**

96.     Plaintiffs restate and reallege all previous paragraphs of this Complaint.

97.     Defendants' bans violate Plaintiffs' rights to petition their state government for redress of grievances by prohibiting their presence altogether at the locus of that government, where the Governor and other executive branch officials, as well as members of the legislature, meet to engage in their elected duties, including hearing from their constituents. As such, the bans violate the Plaintiffs' rights under the First and Fourteenth Amendments.

98.     Plaintiffs have suffered, are suffering, and absent prospective relief will continue to suffer injuries as a result of these violations.

### COUNT V:  42 U.S.C. § 1983 –

**Violation of Civil Rights Under the Fifth, Ninth, and Fourteenth Amendments – Freedom of Movement & Substantive Due Process**

99.     Plaintiffs restate and reallege all previous paragraphs of this Complaint.

100.    Defendants' draconian State Capitol Complex bans, which altogether banish Plaintiffs from the public square of the State of Iowa absent any narrow tailoring at all, violate the Plaintiffs' fundamental right of free movement protected by the Fifth, Ninth, and Fourteenth Amendments.

101.    Plaintiffs have suffered, are suffering, and absent prospective relief will continue to suffer injuries as a result of these violations.

## COUNT VI:

### 42 U.S.C. § 1983 – Violation of Civil Rights Provided Under the Fifth and Fourteenth Amendments – Procedural Due Process

102.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

103.    Defendants' bans restrict Plaintiffs' constitutional rights of speech, assembly, the right to petition government for redress of grievances, and fundamental freedom of movement absent constitutionally sufficient notice or opportunity to be heard to contest the bans.

104.    Plaintiffs have suffered, are suffering, and absent prospective relief will continue to suffer injuries as a result of these violations.

## COUNT VII:

### 42 U.S.C. § 1983 – Violation of Civil Rights Provided Under the First Amendment – First Amendment Retaliation

105.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

106.    Defendants' six-month and one-year bans from the Iowa Capitol Complex was in retaliation for Plaintiffs' prior constitutionally-protected speech, violating the Plaintiffs' rights under the First and Fourteenth Amendments to the U.S. Constitution to be free from retaliation for exercising their constitutional rights.

107.    Plaintiffs have suffered, are suffering, and absent prospective relief will continue to suffer injuries as a result of these violations.

## PRAYER FOR RELIEF

108.    Plaintiffs respectfully request that the Court grant the following relief:

a. Issue an injunction ordering Defendants, their subordinates, agents, employees, and all others acting in concert with them to rescind the Iowa Capitol Complex bans described herein;

b. Issue an injunction ordering Defendants, their subordinates, agents, employees, and all others acting in concert with them to cease all enforcement of the bans, including the threatened arrest and/or citation for criminal trespass;

c. Enter a judgment declaring the bans unlawful under the First, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution;

d. Order Defendants to pay Plaintiffs compensatory and punitive damages for the deprivations of Plaintiffs' rights under the First, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution which have already occurred, in an amount to be determined at trial;

e. Award Plaintiffs reasonable attorney's fees and costs; and

f. Grant any other such relief as this Court may deem just and proper.

## JURY DEMAND

109. Plaintiff demands a trial by jury of all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated this 5th day of October, 2020.

Respectfully submitted:

/s/ Rita Bettis Austen
Rita Bettis Austen, AT0011558
ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone:  (515) 207-0567
Fax: (515) 243-8506
Email:  Rita.Bettis@aclu-ia.org

23

/s/ Shefali Aurora
Shefali Aurora, AT0012874
ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone:  (515) 243-3988
Fax: (515) 243-8506
Email:  Shefali.Aurora@aclu-ia.org

/s/Glen S. Downey
Glen S. Downey, AT0012428
The Law Offices of Glen S. Downey, LLC
5214 Ingersoll Avenue
Des Moines, IA, 50312
Telephone:  (412) 865-7110
Fax: (515) 259-7599
Email: glen@downey-law.net

/s/ Nathan A. Mundy
Nathan A. Mundy, AT0009065
Mundy Law Office, P.C.
317 6th Ave., Suite 1300
Des Moines, IA 50309
Ph: (515)288-1552
Fax: (515) 598-7591
Email: nathan@mundylawdsm.com