UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| Jalesha Johnson, Louise Bequeaith, Brad Penna, Brandi Ramus, and Haley Jo Dikkers, <br><br> Plaintiffs, <br><br> v. <br><br> Stephan K. Bayens, Commissioner of the Iowa Department of Public Safety, *in his official and individual capacities*, Lieutenant Steve Lawrence, Iowa State Patrol District 16 Commander, *in his official and individual capacities*, and Sergeant Tyson Underwood, Assistant District 16 Commander, *in his individual capacity*, Iowa State Patrol Trooper Durk Pearston (Badge Number 168), *in his individual capacity*, and Iowa State Patrol Trooper John Doe #1, *in his individual capacity*. <br><br> Defendants. | Docket No. 20-306 <br><br><br><br> **Plaintiffs' Motion for a Preliminary Injunction** <br><br> EXPEDITED RELIEF REQUESTED |

COME NOW Plaintiffs, and submit the following brief supporting their Motion for

a Preliminary Injunction. In support, Plaintiffs state as follows:

## Table of Contents

**Factual Background** ................................................................................................. 1

**Argument** ................................................................................................................. 2

I.  Plaintiffs Are Likely to Succeed on the Merits of Claim that the Capitol bans are Unconstitutional Prior Restraints. ................................................................. 3

    A.  The Capitol Bans are Prior Restraints on First Amendment Rights. .......... 3

    B.  As Prior Restraints, the Capitol Bans Are Subject to Presumptive Unconstitutionality and the Strictest Scrutiny. .......................................... 4

    C.  The Capitol Bans Cannot Overcome the Presumptive Unconstitutionality and the Strict Scrutiny Applicable to Prior Restraints. ............................. 8

        1.  The Capitol Bans Fail to Provide Procedural Safeguards Required of Prior Restraints. ............................................................................... 8

        2.  The Capitol Bans Do Not Fall Within the Narrow Situations in Which the Court Recognizes they are Potentially Permissible. ................... 10

        3.  The Capitol Bans Fail the Strictest Scrutiny Applicable to Prior Restraints. ..................................................................................... 11

II.  The Remaining Preliminary Injunction Factors All Weigh in Favor of Granting Preliminary Injunctive Relief. ..................................................................... 16

    A.  The State's Violations of Plaintiffs' First Amendment Rights Constitutes Irreparable Harm. ................................................................................... 16

    B.  The Balance of Hardships Weighs in Favor of Granting a Preliminary Injunction. .............................................................................................. 17

    C.  The Public Interest Weighs in Favor of Granting a Preliminary Injunction. ................................................................................................................ 17

**Conclusion** ............................................................................................................ 18

**Factual Background**

The facts in this case are straightforward. Plaintiffs in this case are supporters and one organizer of the Des Moines Black Liberation Movement ("Des Moines BLM"). (Johnson Aff. ¶¶ 5-7; Ramus Aff. ¶¶ 4-6; Bequeaith Aff. ¶¶ 4-5; Penna Aff. ¶ 3; Dikkers Aff. ¶¶ 4-5.). On July 1, 2020, shortly after being arrested by Des Moines Police Department officers during a protest at the Iowa Capitol, Plaintiffs were banned by the Iowa State Patrol, a Division of the Iowa Department of Public Safety, from returning to the Iowa Capitol Complex. (Johnson Aff. ¶¶ 13-16; Ramus Aff. ¶¶ 15-16, 19; Bequeaith Aff. ¶¶ 12-16; Penna Aff. ¶¶ 8-11; Dikkers Aff. ¶¶ 11-14.) All Plaintiffs were banned verbally by officers on July 1, 2020; two were banned for one year, until July 1, 2021; three were banned for six months, until January 1, 2021. (Johnson Aff. ¶ 16; Ramus Aff. ¶19; Bequeaith Aff. ¶16; Penna Aff. ¶ 11; Dikkers Aff. ¶ 14.) Following those verbal bans, three received additional written bans, for six-months. (Ramus Aff. ¶ 29; Bequeaith Aff. ¶ 18; Dikkers Aff. ¶ 16.) They were told if they returned to the Iowa Capitol Complex, they would be cited or arrested for criminal trespass. (Johnson Aff. ¶ 16; Bequeaith Aff. ¶16; Ramus Aff. Ex. A; Bequeaith Aff. Ex. A; Dikkers Aff. Ex. A.)

The Iowa Capitol Complex is a very large area, comprising approximately 24 city blocks in the heart of the state's capitol, and consists of many areas and types of traditional public fora and designated public fora, such as the West Capitol Terrace in front of the Capitol, the green laws around the Capitol and public monuments, sidewalks and paths, and public streets. (Ramus Aff. Ex. B, Ramus Aff. Ex. A; Bequeaith Aff. Ex. A; Dikkers Aff. Ex. A). It is also the situs of our state government, where all three branches conduct their business and may be reached, as an audience, by Iowans, whether they are assembling to protest together or visiting with their legislators in the Capitol Rotunda. (Johnson Aff ¶¶ 8, 22-25; Ramus Aff. ¶ 36; Bequeaith Aff. ¶ 25; Penna Aff. ¶¶ 15-16; Dikkers Aff. ¶ 21.)

1

All Plaintiffs have already been blocked from exercising their First Amendment rights, including core political speech and assembly. All are also outright prohibited under threat of arrest from exercising those rights at the Iowa Capitol Complex for the duration of the six month and one year bans they are subject to, and thus are reasonably chilled from doing so. (Johnson Aff. ¶ 16; Ramus Aff. ¶19; Ramus Aff. Ex. A;  Bequeaith Aff. ¶16;  Bequeaith Aff. Ex. A; Penna Aff. ¶ 11; Dikkers Aff. ¶ 14; Dikkers Aff. Ex. A.)

Additional facts specific to individual Plaintiffs will be discussed as necessary in the argument below.

## Argument

Plaintiffs seek an order preliminarily enjoining the Defendant Department of Public Safety, its Commission, and its officers (collectively "the State") from enforcing the bans. A preliminary injunction is necessary to halt the State's continuing violation of Plaintiffs' First Amendment rights.

A preliminary injunction should be issued where Plaintiffs can demonstrate (1) a likelihood of success on the merits; (2) a threat of irreparable harm absent the injunction; (3) that the threatened injury outweighs any harm that may result from an injunction to the non-movant; and (4) that the injunction will not undermine the public interest. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *Child Evangelism Fellowship of Minn. v. Minneapolis Special Sch. Dist. No. 1*, 690 F.3d 996, 1000 (8th Cir. 2012).

Of these four factors, "likelihood of success on the merits is most significant." *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995) (*quoting S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992). "When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction

are generally deemed to have been satisfied." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2011) (en banc) (internal quotation marks omitted). Accordingly, when Plaintiffs are "likely to win on the merits of [their] First Amendment claim, a preliminary injunction is proper." *Id.* at 877; *see also Phelps–Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps–Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012) ("In a First Amendment case . . . the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue.")

Plaintiffs "'need only establish a likelihood of succeeding on the merits on any one of [their] claims.'" *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016) (quoting *Am. Rivers v. U.S. Army Corps of Eng'rs*, 271 F. Supp. 2d 230, 250 (D.D.C. 2003)). Because Plaintiffs' arguments herein are sufficient to establish the need for a preliminary injunction, Plaintiffs do not include all their legal claims in the interest of party and judicial economy. Plaintiffs can establish a likelihood of success on their claims that the bans are unconstitutional prior restraints on First Amendment rights.

### I. Plaintiffs Are Likely to Succeed on the Merits of Claim that the Capitol bans are Unconstitutional Prior Restraints.

The Capitol bans at issue in this case are prior restraints on Plaintiffs' First Amendment rights to speak, assemble, and petition the government for redress of grievances in traditional public fora. The Defendants cannot overcome the exacting scrutiny and heavy burden placed on prior restraints.

### A. The Capitol Bans are Prior Restraints on First Amendment Rights.

A prior restraint describes governmental regulation of speech that "makes the exercise of protected expression contingent upon obtaining permission from government officials." *Books, Inc. v. Pottawattamie Cty.*, 978 F. Supp. 1247, 1254 (S.D. Iowa 1997) (citing *Near v. Minnesota*,

283 U.S. 697, 713 (1931)). The term describes "administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *United Youth Careers, Inc. v. Ames*,  412 F.Supp.2d 994, 1002 (S.D. Iowa 2006) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993). Put differently, government regulations of speech are a prior restraint "if they permit authorities to deny the use of a forum for protected expression in advance of actual expression." *Wall Distributors, Inc. v. City of Newport News,* 782 F.2d 1165, 1171 (4th Cir. 1986)).

Here, the Capitol bans are indisputably prior restraints. Rather than responding after the fact to the commission of unlawful acts—such as by dispersing a protest that has become unlawful or arresting a protester who commits a crime—the Defendants banned Plaintiffs from the Iowa Capitol Complex altogether. The Capitol bans preemptively prohibit Plaintiffs' use of a traditional public forum for protected speech, in order to avoid the assumed potential for such unlawful acts in the future. The Capitol bans restrict Plaintiffs from exercising their core First Amendment rights to gather and speak on the traditional public fora of the Iowa Capitol Complex, where no permit is otherwise required for daytime protests, and where Iowans routinely go to assemble, protest, and speak to legislators and the Iowa Governor's Office. (Johnson Aff ¶¶ 8, 22-26; Ramus Aff. ¶ 36; Ramus Aff. Ex. A; Bequeaith Aff. ¶ 25; Bequeaith Aff. Ex. A; Penna Aff. ¶¶ 15-16; Dikkers Aff. ¶ 21; Dikkers Aff. Ex. A.) They are prior restraints.

### B. As Prior Restraints, the Capitol Bans Are Subject to Presumptive Unconstitutionality and the Strictest Scrutiny.

The Supreme Court views prior restraints as particularly offensive to the First Amendment. *See Near*, 238 U.S. 697. No area of First Amendment doctrine more strictly limits governmental power to restrain speech. *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971). While prior restraints are not per se unconstitutional, they are *presumptively* unconstitutional. *Nebraska*

*Press Ass'n v. Stuart*, 427 U.S. 539, 570 (1976) ("[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."); *See, e.g.,* *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975); *Pittsburgh Press v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376 (1973); *New York Times Co. v. U.S.*, 403 U.S. 713, 714 (1971); *Organization for a Better Austin*, 402 U.S. at 419; *Carroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175 (1968); *Freedman v. Maryland*, 380 U.S. 51 (1965); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Prior restraints carry a heavy burden in justifying their imposition. *Bantam Books*, 372 U.S. at 70.

Prior restraints are subject to the strictest scrutiny because of the particular dangers they pose to the right of free expression. "The presumed unconstitutionality of prior restraints is greater than that against laws that reserve judgment and punishment until after the speaker is allowed to speak." *Books, Inc. v. Pottawattamie Cty., Iowa*, 978 F. Supp. 1247, 1254 (S.D. Iowa 1997) (citing *Vance v. Universal Amusement Co.,* 445 U.S. 308, 315–16 (1980)). *See also Berndt v. California Dept. of Corrections,* 2004 WL 1774227 (N.D. Cal. 2004) ("Prior restraints on free speech under the First Amendment are subject to the highest level of scrutiny. Strict scrutiny is appropriate because of the 'peculiar dangers presented by such restraints' on free speech."), citing *Levine v. U.S. Dist. Court for Cent. Dist. of California*, 764 F.2d 590, 595 (9th Cir. 1985).)

The Eighth Circuit has explained the difference between the strict scrutiny applied to content-based speech restrictions which are not prior restraints, and the even stricter scrutiny applied to prior restraints, such as injunctions: "An injunction must 'burden no more speech than necessary [to serve a compelling government interest], while an ordinance must only be "narrowly tailored." *Douglas v. Brownell*, 88 F.3d 1511, 1520 (8th Cir. 1996). In either context, strict scrutiny is never satisfied when the interest served by the law is anything less than the most "pressing public

necessity." *Turner Broadcasting System, Inc., v. F.C.C.*, 512 U.S. 622, 680 (1994). It is not enough that the law would serve "legitimate, or reasonable, or even praiseworthy" ends. *Id.*

The rationale in applying this strictest scrutiny to prior restraints is their unique power to chill the freedom of expression foundational to our democracy and free society:

> Behind the distinction [between prior restraints and subsequent penalties] is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.

*Se. Promotions,* 420 U.S. at 559. *See also Books, Inc.*, 978 F.Supp. at 1254-55 (quoting Alexander M. Bickel, *The Morality of Consent* 61 (1975) ("Prior restraints fall on speech with a brutality and a finality all their own. Even if they are ultimately lifted they cause irremediable loss, a loss in the immediacy, the impact, of speech.... A prior restraint, therefore, stops more speech more effectively. A criminal statute chills, prior restraint freezes.")).

Here, Plaintiffs' ability to exercise their First Amendment rights to protest and assemble at the Capitol is not merely chilled; it is frozen. Indeed, Plaintiffs have already been forced to miss two demonstrations at the Capitol that they wished to attend—the Indigenous People's event, and the clergy-led call for charges against BLM protesters to be dropped. (Johnson Aff. ¶¶ 27-29; Ramus Aff. ¶¶ 25-28, 33-35; Bequeaith Aff. ¶¶ 21-22; Penna Aff. ¶12; Dikkers Aff. ¶19.) The Des Moines BLM organization as a whole, for which Plaintiff Johnson is an organizer, has had to entirely cease holding events at the Iowa Capitol Complex. (Johnson Aff. ¶¶ 23-25.) While she and her organization would prefer to have near-daily events at the Iowa Capitol Complex, they instead have been diverted to other locations, where they are unable to communicate their message as effectively to their intended audience of policymakers and the public. (Johnson Aff. ¶ 26.) This complete cessation of their fundamental right to go to the situs of their state government and

communicate core political speech—where it may be heard by legislators, the governor and other executive branch officials, and the public more broadly—is precisely the harm that prior restraint doctrine is designed to protect against.

Prior restraint doctrine requires no formal sanction to be triggered. Even a "system of informal censorship" will be held to be unconstitutional prior restraint unless it meets the narrow exceptions recognized by the Court. *Backpage.com, LLC v. Dart*, 807 F.3d 229, 235 (7th Cir. 2015) ("The court held the state's 'system of informal censorship' unconstitutional, pointing out that 'though the Commission is limited to informal sanctions—the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation—the record amply demonstrates that the Commission deliberately set about to achieve the suppression of publications deemed 'objectionable' and succeeded in its aim.'") (quoting *Bantam Books, Inc.*, 372 U.S. at 67).

In this case, Defendants verbally threatened Plaintiffs with arrest for criminal trespass should they exercise their First Amendment rights at the Iowa Capitol Complex. (Johnson Aff. ¶ 16; Bequeaith Aff. ¶16.) The Defendants further threatened three of the Plaintiffs in writing with arrest (or theoretically citation) for criminal trespass should they exercise their First Amendment rights at the Iowa Capitol Complex absent prior written authorization "by the Iowa Legislative Leadership or other future management staff." (Ramus Aff. Ex. A; Bequeaith Aff. Ex. A; Dikkers Aff. Ex. A.) These threats go much further than the informal sanctions recognized by the courts as sufficient to invoke prior restraint doctrine. They constitute precisely the type of "coercion, persuasion, and intimidation" deliberately set out to suppress Plaintiffs' speech prior restraint doctrine is concerned about. *Backpage.com,* 807 F.3d at 235 (quoting *Bantam Books, Inc.*, 372 U.S. at 67).

In addition to surviving strict scrutiny, prior restraints may only overcome the strong presumption of unconstitutionality if it both has "been accomplished with procedural safeguards that reduce the danger of suppressing constitutionally protected speech" and "fit[s] within one of the narrowly defined exceptions to the prohibition against prior restraints." *Se. Promotions*, 420 U.S. at 559; *Bantam Books*, 372 U.S. at 71; *Freedman*, 380 U.S. at 58.

These procedural safeguards, designed to obviate the dangers of a censorship system, are required even when a prior restraint would otherwise pass strict scrutiny under the First Amendment. *Se. Promotions*, 420 U.S. at 553-56. The Court has identified "two evils" of prior restraint procedures, either of which, if found, render a prior restraint invalid: (1) a system that places "unbridled discretion in the hands of a government official or agency," or (2) a system of prior restraint that "fails to place limits on the time within which the decisionmaker must [make a decision whether to allow the speech]". *See United Youth Careers*, 412 F.Supp.2d at 1003 (quoting *Se. Promotions*, 420 U.S. at 558).

### C. The Capitol Bans Cannot Overcome the Presumptive Unconstitutionality and the Strict Scrutiny Applicable to Prior Restraints.

#### 1. The Capitol Bans Fail to Provide Procedural Safeguards Required of Prior Restraints.

No less than the municipal theater's denial of an application to put on a local production of the musical Hair at issue in *Se. Promotions*, the Capitol bans fail on account of both of the "two evils".

The bans perfectly define unbridled discretion by a decisionmaker, because they were ad hoc measures taken by Defendants against Plaintiffs absent any criteria or procedure whatsoever. (Johnson Aff. ¶ 21; Ramus Aff. ¶ 40; Dikkers Aff. ¶ 22.) They were based entirely in the discretion of Defendants, pursuant to no legal authority or permitting scheme. Iowa Code section 716.8(1),

cited in the letter, actually just sets out that the penalty imposed on a person who "knowingly trespasses upon the property of another" is a simple misdemeanor punishable with a fine, and allowing officers to arrest the person so charged. *Id.* It does not purport to authorize state patrol officers to enforce a six-month or one-year prior restraint on individuals' exercise of core First Amendment rights and freedoms on the State Capitol Complex. *Id.* Nor do any administrative regulations or written policies set out a procedure or criteria for Defendants to ban individuals from the Capitol. Indeed, to Plaintiffs' knowledge, the bans are unprecedented. (Johnson Aff. ¶ 21; Ramus Aff. ¶ 40; Dikkers Aff. ¶ 22.)

The bans further fail to impose any time limits on government officials to determine if Plaintiffs may in fact use the Iowa Capitol Complex to speak and assemble. To the contrary, the verbal bans communicated by Defendants to all Plaintiffs contained no reference to any even theoretical exception to the bans. Plaintiffs were merely told they were banned, and would be arrested for criminal trespass if they were found present at the Iowa Capitol Complex. The written bans vaguely reference the possibility that Plaintiffs would be allowed to exercise their First Amendment rights to speak and assemble at the Iowa Capitol Complex with prior written authorization "by the Iowa Legislative Leadership or other future management staff." (Ramus Aff. Ex. A; Bequeaith Aff. Ex. A; Dikkers Aff. Ex. A.) On its face, this contains no required time limit for either "Iowa Legislative Leadership" or "other future management staff" to render a decision (or how to seek such a determination, or what criteria would be considered). And in fact, the theoretical exception has proved illusory. Plaintiff Ramus doggedly sought such a determination from both the Iowa State Patrol and the majority and minority leadership of the Iowa Senate and the Iowa House. (Ramus Aff. ¶ 31-32; Ramus Aff. Ex. D.) Her inquiries went unanswered. (*Id.*) When she received any response at all, legislators informed her that they had no knowledge of the

bans and/or no information about any process she could avail herself of in order to gain access to the Iowa Capitol Complex. Indeed, she has not been provided any communication by Defendants or legislators in response to her queries since late July.

### 2. The Capitol Bans Do Not Fall Within the Narrow Situations in Which the Court Recognizes they are Potentially Permissible.

Because the bans lack the procedural safeguards required under the Constitution as set forth in *Freedman*, *Se. Promotions* and their progeny, they violate Plaintiffs' First Amendment rights—even if they fit "within one of the narrowly defined exceptions to the prohibition against prior restraints." *S.S. Promotions*, 420 U.S. 546 at 559. However, the Capitol bans also fail because they do not fit within one of these narrowly defined exceptions.

Prior restraints are only even theoretically permissible in a narrow number of recognized situations: imminent threats to national security, restraints against obscenity, or to protect a defendant's right to a fair trial—and only then as a last resort. *See Se. Promotions,* 420 U.S. at 558-59 (alleged obscenity)("In order to be held lawful, [a prior restraint], first, must fit within one of the narrowly defined exceptions to the prohibition against prior restraints."); *New York Times*, 403 U.S. 713 (national security); *Nebraska Press Ass'n*, 427 U.S. at 562-68 (right to fair trial). *See also Near*, 283 U.S. at 714 (1931). The capitol ban fits none of these narrow situations.

Additionally, in the context of a licensing or permitting scheme, "reasonable time, place, or manner restrictions are recognized to the general prohibition against prior restraints." *United Youth Careers*, 412 F.Supp.2d at 1003 (quoting *United States v. Kistner*, 68 F.3d 218, 221 n.7 (8th Cir. 1995) (citing *Cmty for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1390 (D.C.Cir. 1990). This exception is "particularly true" when the speech in question occurs on a non-public forum. *United Youth Careers*, 412 F.Supp.2d at 1003. Here, the Capitol bans restrict First Amendment activities on traditional public forums.  (Johnson Aff ¶¶ 8, 22-26; Ramus Aff. ¶ 36; Ramus Aff.

Ex. A; Bequeaith Aff. ¶ 25; Bequeaith Aff. Ex. A; Penna Aff. ¶¶ 15-16; Dikkers Aff. ¶ 21; Dikkers Aff. Ex. A). Thus, arguably the reasonable time, place, and manner ("TPM") inquiry is inapplicable. Nevertheless, the bans also fail the reasonable time, place, and manner inquiry.

"[I]n order for a [TPM] regulation to be valid, it must not only (1) contain adequate "narrow, objective, and definite" standards to guide the officials' decision; but it must also (2) be subject to "effective judicial review." *See Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150-51 (1969); *see also United Youth Careers*, 412 F. Supp. 2d at 1011 (quoting *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002)); *Freedman*, 380 U.S. at 58-59. Here, as already demonstrated, no standards at all existed to guide the Defendants in banning Plaintiffs from using the traditional public fora of the Iowa Capitol Complex to engage in protected speech and assembly. *See supra,* Part I.C.1, at 8-10. Rather, the bans were a feature of, and left any exception to, the unfettered discretion of decisionmakers. The bans also lacked any right of judicial review. (*See, e.g.,* Johnson Aff. ¶ 16; Bequeaith Aff. ¶16; Bequeaith Aff. Ex. A; Ramus Aff. Ex. A; Dikkers Aff. Ex. A.) Thus, the bans cannot be saved by any argument that they constitute reasonable TPM restrictions on Plaintiffs' First Amendment rights.

### 3.   The Capitol Bans Fail the Strictest Scrutiny Applicable to Prior Restraints.

It is unnecessary to demonstrate that the Capitol bans fail the strict scrutiny applicable to prior restraints, because they otherwise fail, as demonstrated above. But they nevertheless do fail strict scrutiny. Putting aside the question whether the Defendants will be able to offer a compelling state interest in communicating such a ban, the complete lack of tailoring of the bans is fatal under strict scrutiny.

To survive the narrow tailoring required of prior restraints, they must burden no more speech than necessary. *See Douglas v. Brownell*, 88 F.3d at 1521. Here, the bans lack any

exceptions for protected First Amendment activity on the Iowa Capitol Complex. They are not limited to specific times of day or limited in time generally, other than the fact that they expire after 6 months and 1 year. Nor do they make exceptions for the traditional public fora on the Iowa Capitol Complex. They are not limited to a particular protest on a particular day. They are not even circumscribed to prevent a particular unlawful behavior which any specific Plaintiff is alleged to have engaged. It is not necessary for Defendants to burden any of Plaintiffs' speech at the Iowa Capitol Complex above and beyond the reasonable TPM restrictions applicable to all Iowas at the Iowa Capitol Complex, but Defendants have burdened all of it. Put simply, the Capitol bans fail narrow tailoring.

Nor is it any defense that Plaintiffs were banned from future First Amendment expression based on their "actions and/or behavior towards citizen(s) and/or employee(s) of the State of Iowa", (Ramus Aff. Ex. A; Bequeaith Aff. Ex. A; Dikkers Aff. Ex. A), or that Plaintiffs' arrests preceded the Capitol bans. (Johnson Aff. ¶¶ 13-16; Ramus Aff. ¶¶ 15-19; Bequeaith Aff. ¶¶13-16; Pena Aff. ¶¶ 8-11; Dikkers Aff. ¶¶ 11-14.) In *United Youth Careers*, this Court found unconstitutional an Ames ordinance which allowed for denial of a solicitation license to a person who was previously convicted of certain crimes. 412 F.Supp.2d at 1007. The Court noted the Plaintiffs' arguments that there are no "First Amendment outcasts" and cited the persuasive authority *Holy Spirit Ass'n for Unification of World Christianity v. Hodge*. 582 F.Supp. 592, 597 (N.D. Tex. 1984) ("There are other means, such as penal laws, to prevent and punish frauds without intruding on the First Amendment freedoms.")(quotation omitted).

The First Amendment does not permit the government to curtail freedom of speech on account of previous conduct, even if the conduct was unlawful. When "a law sets out primarily to arrest the future speech of a defendant as a result of his past conduct, it operates like a censor, and

as such violates First Amendment protections against prior restraint of speech." *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 507 (6th Cir. 2001). The proper response to unlawful conduct is to address that conduct directly, *e.g.*, by instituting legal proceedings or taking appropriate administrative or disciplinary action. But the First Amendment does not allow censorship of speech as a sanction for past conduct. *Cf. Collins v. Jordan*, 110 F.3d 1363, 1371–72 (9th Cir. 1996) ("The generally accepted way of dealing with unlawful conduct that may be intertwined with First Amendment activity is to punish it after it occurs, rather than to prevent the First Amendment activity from occurring in order to obviate the possible unlawful conduct…. The law is clear that First Amendment activity may not be banned simply because prior similar activity led to or involved instances of violence.").

Indeed, even if a ban *following a criminal conviction* could be upheld on strict scrutiny—a question not before this court—the Defendants face the additional insurmountable hurdle here that the Plaintiffs were banned based on mere allegations. None of the Plaintiffs were banned based on a conviction. Getting arrested is not an unlawful act, and individuals who are arrested have not necessarily committed unlawful acts. *See Davis v. United States*, 229 F.2d 181, 185 (8th Cir. 1956) ("[A]n arrest is in the nature of a mere accusation, and is not evidence that the person arrested has committed the offense charged."). The bans were issued *ultra vires* and *ad hoc* by Defendants, entirely outside the procedures of the Plaintiffs' criminal cases. Nor will the outcome of their criminal charges impact the applicability of the bans to their ability to exercise their First Amendment rights.

In the analogous context of cases challenging prospective bans of members of the public from public meetings based on the person's prior behavior, the courts, applying varying analytical frameworks, have unanimously struck them down. *See Surita v. Hyde*, 665 F.3d 860, 869-71 (7th

13

Cir. 2011) (bar invalid as content-based regulation; would also be invalid if it were content-neutral); *Theyerl v. Manitowoc Cty.*, 41 F. Supp. 3d 737, 738-45 (E.D. Wis. 2014) (same); *Brown v. City of Jacksonville*, 2006 WL 385085, at *3-5 (M.D. Fla. Feb. 17, 2006) (bar invalid as content-neutral regulation); *Barna v. Bd. of Sch. Directors of the Panther Valley Sch. Dist.*, 143 F. Supp. 3d 205, 207-29 (M.D. Pa. 2015) (same); *Stevens v. Sch. City of Hobart*, 2015 WL 4870789, at *14 (N.D. Ind. Aug. 6, 2015) (same); *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 544-50 (D. Vt. 2014) (same); *Reza v. Pearce*, 806 F.3d 497, 502-05 (9th Cir. 2015) (bar unreasonable even under analysis applicable to nonpublic forum); *Walsh v. Enge*, 154 F. Supp. 3d 1113, 1126-34 (D. Or. 2015) (same); see also *Cuellar v. Bernard*, 2013 WL 1290215, at *2-4 (W.D. Tex. Mar. 27, 2013) (whether content-based or content-neutral, bar not narrowly tailored). Indeed, as a district court considering a *three-month ban* from a public meeting remarked, "This Court has found no case authorizing a time, place and manner restriction that limits such a length of time for a single disruptive incident." *Brown*, 2006 WL 385085, at *6; accord *Walsh*, 154 F. Supp. 3d at 1118 ("No appellate opinion of which this Court is aware has ever held that the First Amendment permits prospective exclusion orders from otherwise public city council meetings.").

Similarly, in *Johnson v. City of Cincinnati*, the Sixth Circuit applied strict scrutiny on the plaintiff's freedom of association claim and struck down a municipal ordinance which banned individuals who were both arrested and convicted of drug crimes from certain areas of the city denominated "drug exclusion zones." 310 F.3d 484, 506 (6th Cir. 2002). The court found a lack of narrow tailoring, reasoning in part that the exclusion based on prior arrest or conviction lacked required exceptions for constitutionally protected activities. *Id.* (distinguishing from juvenile curfew ordinances which were upheld based on exceptions to allow for interstate travel, and to engage freely in any activity protected by the First Amendment). The Court also faulted the

ordinance for failing to take into account any particularized inquiry that an excluded person would be likely to engage in recidivist drug activity in the drug exclusion zones. *Id.* at 503. Here, the Capitol bans, like the ordinance at issue in *Johnson*, lack any exceptions for protected First Amendment activities. And even more dramatically than the ordinance creating exclusion zones at issue in *Johnson*, the Capitol bans lack any procedural criteria for particularized fact-finding about individuals banned from the Capitol.

Finally, it should be noted that it is no defense that Plaintiffs may protest elsewhere—in this case, for example, the downtown Des Moines Pappajohn Sculpture Park. First, Plaintiffs have already missed participating in protests organized by other groups occurring on the Capitol Complex, in addition to the other types of First Amendment activities they are and will be prevented from engaging in, such as lobbying their legislators or the Governor's Office. (Johnson Aff. ¶¶ 24-29; Ramus Aff. ¶¶ 24-28, 34-38; Bequeaith Aff. ¶¶ 20-23; Penna Aff. ¶ 12; Dikkers Aff. ¶¶ 19-20.) Second, the Supreme Court has squarely rejected this argument in *Se. Promotions*, determining the availability of alternative locations to put on a local production of Hair did nothing to cure the unconstitutional prior restraint. *Se. Productions*, 420 U.S. at 556 ("Whether petitioners might have used some other, privately owned, theater in the city for the production is of no consequence. . . Even if a privately owned forum had been available, that fact alone would not justify an otherwise impermissible prior restraint."). "One is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Id.* (quoting *Schneider v. State*, 308 U.S. at 163).

Because the Capitol bans are prior restraints falling outside of the traditional narrow situations in which the First Amendment theoretically would tolerate them, and alternatively because they lack the required procedural safeguards required to obviate the harms prior restraints

pose to free expression, and because they fail strict scrutiny due to a total lack of narrow tailoring, Plaintiffs are likely to succeed in their claim that they are unconstitutional in violation of the First Amendment.

## II.   The Remaining Preliminary Injunction Factors All Weigh in Favor of Granting Preliminary Injunctive Relief.

To the extent they are relevant, all of the other factors for issuing a preliminary injunction weigh in favor of Plaintiffs. "When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Minn. Citizens Concerned for Life*, 692 F.3d at 870. Here, Plaintiffs demonstrate a strong likelihood of succeeding on their claim that the Capitol bans are unconstitutional prior restraints on their protected First Amendment rights. While the Court need not go any further to find that a preliminary injunction is warranted, the remaining factors support issuing a preliminary injunction as well.

### A. The State's Violations of Plaintiffs' First Amendment Rights Constitutes Irreparable Harm.

"'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Here, Plaintiffs are facing the loss of First Amendment freedoms not for a minimal period of time, but for six months and one year, respectively. (Johnson Aff. ¶ 16; Ramus Aff. ¶19; Ramus Aff. Ex. A; Bequeaith Aff. ¶16; Bequeaith Aff. Ex. A; Penna Aff. ¶ 11; Dikkers Aff. ¶ 14; Dikkers Aff. Ex. A.) They have already been blocked from participating in multiple protests at the Capitol which they wanted to attend. (Johnson Aff. ¶¶ 24-29; Ramus Aff. ¶¶ 24-28, 34-38; Bequeaith Aff. ¶¶ 20-22; Penna Aff. ¶ 12; Dikkers Aff. ¶¶ 19-20.) They have had to relocate planned Des Moines BLM protests away from the Capitol entirely. (Johnson Aff. ¶¶ 23-25.) And they will continue to

be blocked until the expiration of the bans from protesting at the Capitol absent relief from this court. (Johnson Aff. ¶¶ 24-29; Ramus Aff. ¶¶ 24-28, 34-38; Bequeaith Aff. ¶¶ 20-23; Penna Aff. ¶ 12; Dikkers Aff. ¶¶ 19-20.) In addition, they have been and will continue to be blocked from engaging in direct citizen lobbying of legislators and the Governor's Office by the bans.  (Johnson Aff. ¶¶ 31-32; Ramus Aff. ¶ 38; Bequeaith Aff. ¶ 23; Penna Aff. ¶ 16; Dikkers Aff. ¶¶ 21-22.) This forced abandonment of the Capitol Complex for the exercise of First Amendment rights is due entirely to the Plaintiffs' fear of arrest and criminal prosecution threatened by the Defendants for violating their ban, a prior restraint. This fear of exercising First Amendment rights under threat of arrest and prosecution is irreparable harm.

### B. The Balance of Hardships Weighs in Favor of Granting a Preliminary Injunction.

The ongoing irreparable injuries to Plaintiffs in the absence of an injunction considerably outweigh any threatened harms that Defendants could possibly demonstrate. There cannot be any injury in enjoining the State from enforcing a facially as-applied unconstitutional prior restraint on Plaintiffs' and others' First Amendment rights. In contrast, the injuries to Plaintiffs' First Amendment rights are ongoing and irreparable. Even with the issuance of a preliminary injunction, the State will continue to have at its disposal criminal prohibitions against unlawful behavior at protests. *See, e.g.*, Iowa Code §§ 723.4 (disorderly conduct), 723.1 (rioting), 719.1 (interference with official acts).

The State cannot claim any burden posed by compliance with the United States Constitution. By contrast, Plaintiffs will suffer irreparable injury if the State continues to prospectively criminalize their First Amendment protected speech. The balance of hardships weighs decidedly in Plaintiffs' favor.

## C. The Public Interest Weighs in Favor of Granting a Preliminary Injunction.

Finally, a preliminary injunction would further the public interest, because "it is always in the public interest to protect constitutional rights." *Phelps-Roper,* 545 F.3d at 690. There is no public interest in continuing to freeze Plaintiffs' protected expression.

## Conclusion

Plaintiffs are likely to succeed on their claim that the Capitol bans are unconstitutional prior restraints on protected First Amendment rights, and the remaining factors all support the issuance of a preliminary injunction. Therefore, this Court should grant Plaintiffs' Motion for a Preliminary Injunction.

Plaintiffs intend to resume protests and other protected activities at the Capitol immediately upon the bans being enjoined. Because Plaintiffs are currently experiencing this prior restraint as an ongoing violation of their constitutional rights, Plaintiffs ask the district court to act as quickly as possible to restore their rights to them by enjoining the bans.

Respectfully submitted:

/s/ Rita Bettis Austen
Rita Bettis Austen, AT0011558
ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone:  (515) 207-0567
Fax: (515) 243-8506
Email:  Rita.Bettis@aclu-ia.org

Shefali Aurora, AT0012874
ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Ste. 808
Des Moines, IA 50309–2317
Telephone:  (515) 243-3988
Fax: (515) 243-8506
Email:  Shefali.Aurora@aclu-ia.org

18

Glen S. Downey, AT0012428
The Law Offices of Glen S. Downey, LLC
5214 Ingersoll Avenue
Des Moines, IA, 50312
Telephone:  (412) 865-7110
Fax: (515) 259-7599
Email: glen@downey-law.net

Nathan A. Mundy, AT0009065
Mundy Law Office, P.C.
317 6th Ave., Suite 1300
Des Moines, IA 50309
Ph: (515)288-1552
Fax: (515) 598-7591
Email: nathan@mundylawdsm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of Court by using the CM/ECF system.

The foregoing paper will also be served along with the Complaint and Summons to all Defendants.

Date: October 5, 2020

/s/Rita Bettis Austen
Rita Bettis Austen