IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JALESHA JOHNSON, LOUISE BEQUEAITH, BRAD PENNA, BRANDI RAMUS, AND HALEY JO DIKKERS,<br><br>PLAINTIFFS,<br><br>v.<br><br>STEPHEN K. BAYENS, COMMISSIONER OF THE IOWA DEPARTMENT OF PUBLIC SAFETY, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, LIEUTENANT STEVE LAWRENCE, IOWA STATE PATROL DISTRICT 16 COMMANDER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, SERGEANT TYSON UNDERWOOD, ASSISTANT DISTRICT 16 COMMANDER, IN HIS INDIVIDUAL CAPACITY, IOWA STATE PATROL TROOPER DURK PEARSTON (BADGE NO. 168), IN HIS INDIVIDUAL CAPACITY, AND IOWA STATE PATROL TROOPER JOHN DOE #1, IN HIS INDIVIDUAL CAPACITY,<br><br>DEFENDANTS. | Case No. 4:20-cv-00306<br><br><br><br><br><br>**BRIEF IN SUPPORT OF DEFENDANTS' RESISTANCE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

TABLE OF CONTENTS

FACTUAL BACKGROUND ........................................................................................................ 3

STANDARDS FOR GRANTING A PRELIMINARY INJUNCTION ......................................... 5

ARGUMENT .................................................................................................................................. 6

I.     Plaintiffs Are Not Likely To Succeed On The Merits. ......................................................... 6

     A. The Prohibitions Are Not Prior Restraint. ................................................................... 7

|      |                                                                                                                                          |     |
|------|------------------------------------------------------------------------------------------------------------------------------------------|-----|
|      | B. Incidental Effect On First Amendment Does Not Make The Prohibition Unconstitutional. | 8 |
|      | C. Plaintiffs have alternatives for protesting in the Capitol Complex. | 11 |
|      | D. The Prohibitions Meet Even The Strictest Scrutiny | 11 |
| II.  | Plaintiffs Will Not Suffer Irreparable Harm. | 12 |
| III. | The Balance Of The Equities Favors The District Court Denying Plaintiffs' Request For A Preliminary Injunction. | 14 |
| IV.  | The Public Interest Favors The District Court Denying Plaintiffs' Request For A Preliminary Injunction. | 15 |
| CONCLUSION | | 16 |

**FACTUAL BACKGROUND**

On July 1, 2020, Des Moines Police officers investigating prior malicious acts that occurred at a protest turned violent at a local Hy-Vee store, came to the State Capitol in search of wanted suspects from the Hy-Vee incident. George Declaration ¶¶ 3-4; Underwood Declaration ¶¶ 3-4. Those prior acts included vandalizing a Des Moines Police Department patrol vehicle. *Id.* Des Moines Police Department Detectives were aware of a protest at the Capitol on July 1, 2020 and believed it likely certain of the suspects who had outstanding arrest warrants would be attending that protest. *Id.*

Working with the Iowa State Patrol (the division of the Iowa Department of Public Safety responsible for Capitol security), certain individuals with outstanding warrants were identified, taken into custody and brought into a room (Room G19) within the Capitol to confirm identity and for initial processing. George Declaration ¶¶ 4-11; Underwood Declaration ¶ 5. A Des Moines Police Department transport vehicle was dispatched to the State Capitol grounds to transport the arrested individuals for formal booking. George Declaration ¶ 4; Underwood Declaration ¶¶ 5-6.

As the Des Moines Police officers and their arrestees made their way from within the Capitol to the waiting transport, several people gathered and began interfering with the officers' efforts to get the arrestees and themselves safely to the transport vehicle. George Declaration ¶¶ 14-21; Underwood Declaration ¶ 8-9; Video 1, 2, 3 and 4.  Outside of the Capitol, several people, including the plaintiffs in this case, began actively interfering with the law enforcement officers. When law enforcement attempted to arrest certain of those people interfering with law enforcement, they were violently attacked by others in the crowd, including at least one of plaintiffs in this case. *Id.* Other Plaintiffs in the present case actively interfered with law enforcement attempting to perform their lawful duties. During the ensuing melee on July 1, 2020

at least two officers were choked and punched and one officer nearly lost control of his firearm when one of his attackers started grabbing for his weapon. *Id.* Ultimately, approximately 15 adults were arrested for their actions on July 1, 2020, on various charges ranging from a single simple misdemeanor to multiple felonies.

Plaintiff Jalesha Johnson was charged with Interference with Official Acts for wrapping her arms around a person being arrested and refusing to disengage. Johnson Complaint and Affidavit; Videos 1, 3 and 4 (believed to be the African American woman in dark shorts, brown shirt and glasses). Louise Bequeaith was charged with disorderly conduct. Bequeaith Complaint and Affidavit. Bradley Penna was charged with crime related to assaulting a peace officer. Penna Complaint and Affidavit; Plaintiff Brandi Ramus was another of the Plaintiffs charged with Interference with Official Acts. Ramus Complaint and Affidavit; Videos 1, 3 (believed to be Caucasian woman with blond hair and yellow shirt). Haley Dikkers was arrested and charged with Interference with Official Acts. Dikkers Complaint and Affidavit.

Once the crowd dispersed and control of the area regained, those persons arrested were transported for formal booking. Pursuant to a request from leaders within the Iowa Legislature as well as consideration of the State Patrol's duty to protect persons and property on the State Capitol grounds, the persons arrested for criminal offenses were given verbal and written notice not to come upon the State Capitol grounds for a period of six months[1] unless they received prior permission. Underwood Declaration ¶¶ 11-13. Legislative leadership as well as the Defendants in this case intentionally limited the duration of the notices in order to allow those persons back on the State Capitol grounds by the time the legislature reconvened in January of 2021. Underwood

---

[1] The Named Defendants are unaware of any time period prohibiting reentry onto State Capitol grounds other than the six-month period set forth in the notices sent to Plaintiffs.

Declaration ¶ 11. Other than the area set forth in the notices, persons receiving the notice were not restricted from any other State-owned or controlled property. Since July 1, 2020, no persons issued notices have been arrested.

The Defendants in this matter were well within the confines of the First Amendment in not allowing persons who criminally and in many cases violently interfered with the lawful duties of police officers to come upon the area of their crimes for a limited period. Neither the arrests of these individuals nor the subsequent notice to the Plaintiffs implicate Plaintiffs' First Amendment rights.

## STANDARDS FOR GRANTING A PRELIMINARY INJUNCTION

Plaintiffs have the burden of establishing the propriety of a preliminary injunction. *Baker Elec. Coop. Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) (citing *Modern Computer Sys. Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734 (8th Cir. 1989) (*en banc*)). The power to grant a preliminary injunction has been called "an awesome power" that "necessarily requires the Court to analyze the record carefully to determine whether Plaintiff has shown that it will be irreparably harmed absent the issuance of the requested relief." *Mediacom Communications Corp. v. Sinclair Broad. Group, Inc.*, 460 F. Supp. 2d 1012, 1017 (S.D. Iowa 2006). "A preliminary injunction of *any* scope is 'an extraordinary remedy.'" *Rodgers v. Bryant*, 952 F.3d 451, 465 (8th Cir. 2019) (emphasis in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

Courts in this circuit apply a four-part test—generally referred to as the *Dataphase* factors—to determine if preliminary injunctive relief is appropriate. *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485-86 (8th Cir. 1993) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (1981) (*en banc*)). The four *Dataphase* factors are: "(1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the

balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest." *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.,* 997 F.2d 484, 485–86 (8th Cir. 1993) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*)). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) (quoting *Calvin Klein Cosmetics Corp. v. Lenox Lab.,* 815 F.2d 500, 503 (8th Cir. 1987); *Dataphase,* 640 F.2d at 114.).

Applying the four-part *Dataphase* factors here, the factors weigh against a preliminary injunction. Thus, the district court should deny Plaintiffs' motion for preliminary injunction.

## ARGUMENT

### I. Plaintiffs Are Not Likely To Succeed On The Merits.

The first *Dataphase* factor is the probability of success on the merits. At this stage of litigation, a district court should "flexibly weight the case's particular circumstances to whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Branstad v. Glickman*, 118 F. Supp. 2d 925, 939 (N.D. Iowa 2000) (quoting *United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1179 (8th Cir. 1998)). In other words, a district court does not determine if the moving party will ultimately win. *Branstad v. Glickman*, 118 F. Supp. 2d 925, 939 (N.D. Iowa 2000). Rather, the likelihood of success factor requires the movant find support for its position in governing law. For this factor to weigh in the movant's favor, the movant's success on the merits must be "at least . . . sufficiently likely to support the kind of relief it requests." *Branstad v. Glickman*, 118 F. Supp. 2d at 939 (quoting *Youngblade,* 878 F. Supp. at 1247). Plaintiffs cannot show that they are sufficiently likely

to prevail on the underlying merits. Consequently, this factor weighs against the district court entering a preliminary injunction.

### A. The Prohibitions Are Not Prior Restraint.

Plaintiffs all engaged in unlawful behavior on the State Capitol grounds that led to their being arrested for those offenses. Plaintiffs were subsequently issued a prohibition on crossing into State Capitol grounds for a period of six months. Both the arrests and subsequent notices are the result of Plaintiffs' conduct - not any speech or communication. Further yet, the notices provided to plaintiffs are absolutely content neutral and don't restrict their access to any property other than the area where they committed criminal offenses. "The State, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated. For this reason, there is no merit to the petitioner's argument they had a constitutional right to stay on the property… Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law was vigorously and forthrightly rejected…" *Adderly v. State of Florida,* 385 U.S. 39, 47-48 (1966) (other citations omitted).

In their brief, Plaintiffs frequently cite to *Southeastern Promotions v. Conrad*, 420 U.S. 546, 547 (1975) to elucidate their position that these capitol ground prohibitions amount to prior restraint. But that case and the other cases presented by Plaintiffs are readily distinguishable on one major premise in that, unlike the present matter, those cases involve restrictions based on the content of the speech or communication. For example, Plaintiffs in *Conrad* first *applied* to express speech, through an application to present "Hair" at the Chattanooga Theater and were then denied their request based on the content of their speech. *Id.* Unlike the present matter, Plaintiff in Conrad did not commit multiple criminal acts on the property of the Theater prior to seeking access to that

property. Plaintiffs in this case are not denied access to State Capitol grounds based on the content of their expression but rather, on the public threat they represented at the protests at the time of their arrest. "The term prior restraint is used 'to describe administrative and judicial order forbidding certain communications when issued in advance of the time that such communication are to occur.'" *Alexander v. U.S.*, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, *Nimmer on Freedom of Speech* § 4.03, p. 4-14 (1984)). While the prohibitions issued in this case prohibit certain conduct, namely crossing State Capitol grounds, they do not prohibit the expression of any kind of speech. *See Alexander*, 509 U.S. at 550-51 ("By contrast, the RICO forfeiture order in this case does not *forbid* petitioner from engaging in any expressive activities in the future, nor does it require him to obtain prior approval for any expressive activities.") (emphasis in original). Plaintiff's own brief explains that prior restraint involves government regulation that "permit authorities to deny the use of a forum *for protected expression* in advance of actual expression." *Wall Distributors, Inc. v. City of Newport News*, 782 F.2d 1165, 1171 (4th Cir. 1986). Nothing in the prohibitions indicates that the denial is based on future speech or meant to deny access to the grounds for the purpose of preventing Plaintiffs from exercising their freedom of expression. This was not prior restraint.

### B. Incidental Effect On First Amendment Does Not Make The Prohibition Unconstitutional.

The incidental effect the prohibition had on Plaintiffs' First Amendment right does not make the prohibition unlawful. *Wright v. City of St. Petersburg, Florida*, 833 F.3d 1291, 1293 (11th Cir. 2016). The *Wright* case is particularly instructive. In *Wright*, an ordained minister and co-director of an addiction recovery program was handing out flyers and offering counseling in a park when he interfered with the arrest of a man with an outstanding arrest warrant. *Id.* "There is no question that the First Amendment protects Wright's ministerial outreach and political speech."

*Id.* Just as there is no question here that the First Amendment protected the Plaintiffs' right to protest as part of the Black Liberation Movement ("BLM") on the State Capitol grounds and within the State Capitol grounds. In *Wright*, just as in this case, the Plaintiff was warned not to interfere in the arrest and told to step back. *Wright,* 833 F.3d at 1293. "When Wright refused to back off and stop, [the officer] arrested him." *Id.* At the time of his arrest, Wright was also issued a "trespass warning" not to enter that park for a period of one year. *Id.* at 1294. This warning was not without consequence to Wright's freedom of expression as the prohibition "made his ministerial outreach more difficult because he could no longer interact with people inside the park." *Id.* "The trespass warning also prevented him from attending a press conference on police brutality held inside the park the day after his arrest." *Id.*

Wright sought to challenge the law that permitted the issuance of such warnings on the basis of First Amendment protections. *Wright*, 833 F.3d at 1295. "If the restrictions are content-neutral and prescribe the time, place, and manner of expression, they must be narrowly tailored and leave open alternative means of communication." *Id.* (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). Only if "the restrictions are not content neutral, they must survive strict scrutiny." *Id.* (citing *Perry*, 460 U.S. at 45). The prohibitions are not intended to prohibit freedom of expression on the State Capitol grounds, instead, they prohibit any conduct – including trespass – on the grounds, making them content neutral and were issued for the purpose of public safety. *See O'Connor v. City and County of Denver*, 894 F.2d 1210, 1216 (10th Cir. 1990) ("[T]he ordinance now before the court was not designed or used to prohibit entertainment or regulate the content thereof.  Although under the City's scheme one must obtain an amusement license before presenting 'entertainment' (as defined by the ordinance) to the public, the Code arguably applies to all entertainment businesses."). When the regulation or government action

furthers an important governmental interest, such as public safety, the action is justified. As stated in *U.S. v. O'Brien*:

> Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms in no greater than is essential to the furtherance of that interest.

*U.S. v. O'Brien*, 391 U.S. 367, 377 (1968).

If the legal remedy were drawn from conduct that had a significant expressive element to it, it might be subject to stricter scrutiny, but in the case at hand, none of the Plaintiffs were arrested for the content of their speech or protest, rather for interfering with official acts, disorderly conduct, and assault. As in *Wright*, where the court found the Plaintiff's interference with an arrest of another not to "intimately related to expressive conduct protected under the First Amendment," even though Wright's original purpose in the park was First Amendment speech. *Wright*, 833 F.3d at 1297 (quoting *Arcara*, 478 U.S. at 706, n.3). As was the case in *Wright*, there is no evidence that the arrests were pretextual to suppress the speech protected by the First Amendment because hundreds of individuals also at the rallies were not arrested unless they exhibited violent or disruptive behavior. *Wright*, 833 F.3d at 1297; *see also Arcara*, 478 U.S. 707, n.4 (finding no evidence in their record of pretext that supported the claim that the "closure of [the] bookstore was sought under the public health nuisance statute as a pretext for the suppression of First Amendment [activity]."). "Any other conclusion would lead to the absurd result that any government action that had some conceivable speech-inhibiting consequences, such as the arrest of a newscaster for a traffic violation, would require analysis under the First Amendment." *Arcara*, 478 U.S. at 708 (O'Connor, J. concurring).

### C. Plaintiffs have alternatives for protesting in the Capitol Complex.

Plaintiffs have boundless alternatives to First Amendment expression outside the State Capitol grounds and therefore, the prohibition is not impermissibly burdensome on Plaintiffs' First Amendment protected speech. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705-706 (Iowa 1986) ("The severity of this burden is dubious at best and is mitigated by the fact that respondents remain free to sell the same material at another location."). Any criminal or civil penalty or remedy could conceivably burden an individual's First Amendment rights. *Id.* "One liable for a civil damages award has less money to spend on paid political announcements or to contribute to political causes, yet no one would suggest that such liability gives rise to a valid First Amendment claim." *Id.* at 706. As stated in *Arcara*, "a thief who is sent to prison might complain that his First Amendment right to speak in public places has been infringed because of the confinement, but we have *explicitly rejected* a prisoner's claim to a prison environment least restrictive of his desire to speak to outsiders." *Id.* (emphasis added). Just as *Wright* was "free to enter the 141 other public parks in St. Petersburg," Plaintiffs are free to enter and attend any rallies or protests held at other locations around Des Moines. *Wright*, 833 F.3d at 1297.

### D. The Prohibitions Meet Even The Strictest Scrutiny.

Plaintiffs are correct that if the Court were to find that these prohibitions were prior restraint, they would have a presumption of unconstitutionality. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 570 (1976); *Organization for Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). However, while prior restraint carries a presumption of unconstitutionality, they are not per se unconstitutional. *Id.* When a state "attempts to punish [expression] after the event it must nevertheless demonstrate that its punitive action was necessary to further the state interests asserted." *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 102 (1979) (citing *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 843 (1978)).

The purpose in issuing the prohibitions was in no way to suppress Plaintiffs' First Amendment rights but rather to protect the public from violent behavior. Officers were deployed to the area in pursuit of individuals with already active arrest warrants. Videos taken at the scenes show that officers were uninvolved in the protests until aggressive and violent behavior led to their intervention and Plaintiffs were either the instigators of that violence or interfered with official acts by trying to physically prevent the arrests of others. Additionally, 11 Iowa Administrative Code Chapter100.2(3) provides, "the Department of Administrative Services and Department of Public Safety shall take reasonable and appropriate measures to ensure the safety of persons and property on the capitol complex . . . [A] [v]iolation of this sub rule is a simple misdemeanor, pursuant to Iowa Code section 8A.322, and *may result in the denial of access to the state building*[.]" Officers had a compelling government interest in protecting the public, including other protestors, from violence and had the authority to issue narrowly tailored prohibitions on access to the State Capitol grounds. "It cannot be doubted that the government has a strong interest in ensuring public safety and order." *Fischer v. City of St. Paul*, 894 F. Supp. 1318, 1327 (D. Minn. Fourth Div. 1995). "But in assessing a First Amendment challenge, a court looks not only at the private claims asserted in the complaint, but also inquires into the governmental interests that are protected by the injunction, which may include an interest in public safety and order." *Schneck v. Pro-Choice Network of Western New York*, 519 U.S. 357, 375 (1997). These prohibitions survive strict scrutiny.

## II.  Plaintiffs Will Not Suffer Irreparable Harm.

The next *Dataphase* factor for the court to consider is whether Plaintiffs will suffer irreparable harm if a preliminary injunction is not granted. Plaintiffs will not suffer irreparable harm if this court does not enter a preliminary injunction. To satisfy the second *Dataphase* factor, a moving party must demonstrate a sufficient threat of irreparable harm. *Bandag, Inc. v. Jack's*

*Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999); *Adam—Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996). "To succeed in demonstrating a threat of irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 778 (8th Cir. 2012) (internal quotation omitted).

Plaintiffs contend they will be irreparably harmed by not being able to flex their First Amendment rights on State Capitol grounds.[2] However, as has been detailed above, this prohibition is not a First Amendment violation, nor a prior restraint, and Plaintiffs are unlikely to succeed on the merits, thereby illustrating that there is no irreparable harm. *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) ("But as we have concluded Powell is unlikely to succeed on showing his First Amendment rights have been violated, we agree with the district court that Powell has not shown a threat of irreparable harm that warrants preliminary injunctive relief.") (citing *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 738 n.11 (8th Cir. 2008) ("[W]ithout a showing that it will likely prevail on its [First Amendment] claim . . . [appellant's] asserted threat of irreparable harm is correspondingly weakened in comparison to the State's interest. . . .")). they still retain the ability to express those views almost anywhere else, so long as they do not become violent and threat to the public again. The notices provided to Plaintiffs was not a permanent nor

---

[2] Notably, Plaintiffs' claims that they would suffer irreparable harm without an injunction is undermined by their choice to delay filing a complaint in this case until they were almost four months into a six-month prohibition. *See Benisek v. Lamone*, 136 S. Ct. 1942, 1944 (2018) ("First a party must show reasonable diligence. . . . In considering the balance of equities among the parties, we think that plaintiffs' unnecessary, years-long delay in asking for preliminary injunctive relief weighed against their request."); *see also CHS, Inc. v. PetroNet, LLC*, 2010 WL 4721073, at *3 (D. Minn. Jan. 21, 2018) ("[CHS waited] more than *eight months*, all while supposedly being 'irreparably harmed,' to ask the Court for an injunction. It has offered no explanation for this delay, which the Court believes undermines the notion that it is being (or likely will be) irreparably harmed.") (emphasis in original).

indefinite restriction but rather limited to six months and intentionally fashioned to allow access to the Capitol grounds prior to the next session of the Iowa legislature. Additionally, nearly four of the six months set forth in the notices has already passed and no preliminary injunction issued at this point will allow them to go back in time and attend the rallies they allege the missed as a result of this prohibition. It is also noteworthy that not a single Plaintiff has been arrested or cited for criminal trespass or any other offense on the Capitol grounds. Plaintiffs also fail to identify any events they will be restricted from attending over the next approximately two months as a result of the prohibition. There is insufficient evidence in the record to show concrete irreparable harm.

### III. The Balance Of The Equities Favors The District Court Denying Plaintiffs' Request For A Preliminary Injunction.

The third *Dataphase* factor is the balance between the plaintiffs' harm and injury that granting the injunction will inflict on other interested parties. The factor requires the court to consider "the balance between the harm [the movant] and the injury that the injunction's issuance would inflict on other interest parties, *and the public interest*." *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 929 (8th Cir. 1994) (emphasis added). While the irreparable harm factor focuses on the harm or potential harm to the plaintiffs from the defendants' conduct or threatened conduct, the balance of harm factor focuses on the harm of granting or denying the injunction upon both of the parties and upon other interested parties, including the public, as well. *Id.* at 929.

In addition to Plaintiffs, there were numerous others present at the State Capitol grounds on July 1, 2020, also exercising their First Amendment freedom of expression. These individuals had their protest and rally disrupted by the violent outbreak by Plaintiffs. In considering the balance of equities, this Court should not only consider the Plaintiffs' First Amendment rights but the government interest of preventing violence along with the First Amendment rights of others that

was disturbed by Plaintiffs' behavior. The court in *Survivors Network of Those Abused by Priests, Inc. v. Joyce*, reached a similar conclusion when weighing Plaintiff's freedom of speech inequity against Defendant's freedom of religion inequity:

> Plaintiffs claim that the balance of inequities favors an injunction due to the threat of irreparable harm caused by the deprivation of their First Amendment freedom of expression, . . . Defendants counter that, if an injunction is granted, the harm imposed upon individuals exercising their freedom of religion will outweigh any irreparable harm to Plaintiff if no order is issued. This Court agrees. . . . [T]he Court concludes that Defendants' hardship outweighs the hardship imposed on Plaintiffs if Defendants were to be enjoined from enforcing [the statute in question].

2012 WL 4481210, at 8-9 (E.D. Mo. Sept. 28, 2012).

The violence is apparent in police reports and videos taken on the scene and the 6-month prohibition serves as an appropriate deterrent, the effect of which outweighs Plaintiffs' interests in protesting at the State Capitol grounds as opposed to elsewhere around Des Moines.

## IV. The Public Interest Favors The District Court Denying Plaintiffs' Request For A Preliminary Injunction.

The final *Dataphase* factor is whether the issuance of the injunction is in the public's interest. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weingberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982) (citing *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 500 (1941). "[T]he balance of equities and consideration of the public interest—are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 32 (2008).

Because of other protests and daily, imperative government work that occurs on and around the Capitol Complex, along with the numerous individuals that visit the complex simply as members of the public, a preliminary injunction shortening the length of the prohibition to access State Capitol grounds would interfere with all of the above. The State interest in orderly, non-

violent protests supports the denial of the preliminary injunction. *See Benisek*, 138 S. Ct. at 1944-45 ("Second, a due regard for the public interest in orderly elections supported the District Court's discretionary decision to deny a preliminary injunction and to stay the proceedings.") (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (*per curiam*)). This factor also weighs against the district court granting Plaintiffs' request for a preliminary injunction.

## CONCLUSION

Plaintiffs are unlikely to succeed on their claim that the prohibitions issued barring Plaintiffs from the State Capitol grounds for a period of six months are unconstitutional prior restraints, that they directly infringe on Plaintiffs' First Amendment rights, or that any of the other factors for a preliminary injunction are met. Therefore, this Court should deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted,

THOMAS J. MILLER
IOWA ATTORNEY GENERAL

/s/ Jeffrey C. Peterzalek
JEFFREY C. PETERZALEK   AT0006274
Assistant Attorney General

/s/ Anagha Dixit
ANAGHA DIXIT                   AT0013042
Assistant Attorney General
1305 East Walnut St., 2nd Fl.
Des Moines, Iowa 50319
Ph: (515) 281-4213; (515) 281-5478
Email:  Jeffrey.Peterzalek@ag.iowa.gov
Email:  Anagha.Dixit@ag.iowa.gov
ATTORNEYS FOR DEFENDANTS

PROOF OF SERVICE

The undersigned hereby certifies that the foregoing instrument was served upon all counsel of record via CM/ECF on this 28th day of October, 2020, at the following email addresses:

>Shefali_Aurora@aclu-ia.org
>glen@downey-law.net
>nathan@mundylawdsm.com

/s/ Rhonda L. Parr